IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

KEITH KARLSON,

 Plaintiff/Counter-claim
 defendant,

vs.                 CASE NO. CV-11-J-1511-NE

RED DOOR HOMES, LLC,
et al.,

 Defendants/ Counter-claim
 plaintiffs.

## MEMORANDUM OPINION

Pending before the court are a motion for summary judgment by defendants Red Door Homes, LLC, SMA Operations Management, LLC, and RDH Advising, LLC (doc. 36), evidentiary material in support of said motion (doc. 37), defendants' motion to strike plaintiff's damages (doc. 38), plaintiff's motion for summary judgment on defendants' counterclaim and evidence in support (doc. 39), plaintiff's brief in support of said motion (doc. 40), plaintiff's brief in opposition to defendants' motion (doc. 42), defendants' brief in opposition to plaintiff's motion (doc. 43), plaintiff's opposition to defendants' motion to strike his damages (doc. 44), plaintiff's reply to defendant's opposition (doc. 46), defendants' reply and further evidence (docs. 47 and 48), defendants' motion to strike plaintiff's declaration and evidentiary submissions in support of plaintiff's opposition to defendants' motion for summary

judgment (docs. 49 and 50), defendants' reply to plaintiff's opposition to defendants' motion to strike plaintiff's damages (doc. 51), plaintiff's response in opposition to defendants' motion to strike the plaintiff's declaration (doc. 52), and the defendants' reply to the same (doc 54). Having considered the pleadings and evidence, the court finds as follows:

## I. Factual Background

This case arises out of claims of copyright infringement. Plaintiff creates renderings of new home plans for marketing purposes.[1] Plaintiff depo. at 20-24. Defendants Red Door Homes, LLC ("Red Door"), and SMA Operations Management, LLC ("SMA") both design new homes. Miller depo. at 51. SMA sold home plans and drawings to builders "on demand," including plaintiff's renderings, if requested by builders, whereas Red Door provided software estimates and building packages, which included access to the renderings, to its licensees, who sold the plans to builders. Declaration of Miller (doc. 37-2), ¶¶ 3, 6; *see also* defendant's motion for summary judgment (doc. 36, at 7-8); Miller depo. at 27-28.

Non-party Patrick Miller created home designs for defendants SMA and Red Door Homes and sent them to plaintiff for renderings on an independent contractor

---

[1] These are colored pictures of what a home design will look like when built, created from elevations, floor plans and/or blue prints.

basis. Miller depo. at 40, 57; plaintiff depo. at 33-34, 55-56, 216.  In 2008, defendant SMA hired Miller full time.  Miller depo. at 57-60.  Miller also became a shareholder in defendant Red Door.  Defendant ex. C, ¶ 2.

Although plaintiff asserts he has claimed a copyright interest since he began working with Miller in 1998 (plaintiff depo. at 35-36), the defendants realized in 2009 plaintiff was claiming copyrights on the renderings. The plaintiff had begun placing copyright language on his invoices to defendants in 2008.  Miller depo. at 80, 86-88.  *See also*, defendant exhibit M (stating plaintiff transferred "a limited copyright to reproduce the artwork ... in unlimited quantities ... royalty free, but only for use directly by you and may not be transferred to another business entity without my expressed (sic) permission....").

In November 2009, the plaintiff sent defendants an email outlining his terms for payment and royalties if they wished to continue to use his services and renderings. Defendant ex. Q.  In that document, the plaintiff states he misunderstood the nature of the Red Door business, but upon learning that his artwork was being provided to licensees, he believed he is entitled to royalties based on the number of builders using the plans. *Id*.  Defendants responded this was not their agreement and the same would not be a good business model for them. *Id.*  Defendants also told plaintiff he could continue doing renderings for a "one time" price, but if he declined,

they would find someone else to perform this service. *Id*. Plaintiff responded that defendants could not use any of his artwork anymore. *Id.*

Plaintiff believes the use of his artwork by defendant Red Door licensees violated his copyright in the renderings, because Red Door had at least 70 of his renderings on its website for use and resale by its licensees and/or clients. Plaintiff depo. at 50, 71, 135-136. Prior to December 16, 2009, plaintiff never mentioned his belief his work was copyrighted to Miller. Plaintiff depo. at 133. His copyright issued with a registration date of December 18, 2009. Plaintiff depo. at 135. Plaintiff did not actually receive the copyright until sometime in 2011. *See e.g.* defendant ex. P.

The defendants removed plaintiff's renderings upon plaintiff's claim of copyright infringement.[2] Miller depo. at 36, 117-118; *see also* plaintiff ex. 8 to doc. 39. By declaration, Patrick Miller stated he was unaware of any licensee of Red Door Homes who actually used the renderings provided by plaintiff. Miller declaration, ¶ 3. They hired someone else to redraw the renderings they were using. Miller depo.

---

[2]An email notice was sent to various defendant licensees stating "the contractor was insisting upon payment from each RDH entity and our original intent was for RDH to have use of the art for each RDH division. The contract language was vague and the contractor has not been reasonable in helping us to come to a solution. As a result, we will be removing the renderings from the website and replacing them ASAP..." Plaintiff ex. 8 to doc. 39.

at 118-119. All of plaintiff's invoices, except his final one claiming payment due for resale of his work, have been paid. Plaintiff depo. at 154-155, 189-190.

In September 2010, plaintiff asserted the defendants owe him $142,279.00 for their use of his artwork as provided to others.[3] *See* defendant ex. J (doc. 37-2). He based this number on the approximately 70 of his renderings available on Red Door's website for use and resale by its licensees and/or clients. Plaintiff depo. at 50, 71, 135-136; defendant ex. J.

On this set of facts, the plaintiff filed suit claiming copyright infringement (Count I); breach of contract (Count II); and conversion (Count III). The defendants filed counterclaims (doc. 9) for breach of agreement (Count I); invalid copyright (Count II); and unjust enrichment (Count III).

## II. Standard of Review

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986). An issue is "material" if it is a legal element of the claim under the applicable substantive law which might affect the

---

[3] The plaintiff asserted he seeks $31,000.00 in his subsequent deposition, then reverted back to $142,000.00, which is the topic of one of the pending motions to strike.

outcome of the case. It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir.1997).

The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005).

The court must consider the evidence in the light most favorable to the non-moving party and may not make credibility determinations nor weigh the parties' evidence. *Frederick v. Sprint/United Management Co.,* 246 F.3d 1305, 1311 (11th Cir.2001); *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000).

### III.  Legal Analysis

A.  <u>Defendant's motion for Summary Judgment</u> (doc. 36):

*1.  Copyright Infringement*

A plaintiff in a copyright case must have a valid copyright and show that original elements of the protected work were copied. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282 (1991). The copying analysis has two parts: whether, as a factual matter, the defendant copied portions of the protected work; and whether, as a mixed question of fact and law, the copied elements are protected expression. *Peter Letterese and Assocs., Inc. v. World Inst. of Scientology Enters.*, 533 F.3d 1287, 1300 (11th Cir.2008).

The Copyright Act states that "[a] work consisting of editorial revisions, annotations, elaborations, or other modifications [to a preexisting work that], as a whole, represent an original work of authorship, is a 'derivative work.'" 17 U.S.C. § 101. Such a work—if it is non-infringing and sufficiently original—qualifies for a separate copyright, although this copyright does not protect the preexisting material

7

employed in the derivative work. *See* 17 U.S.C. § 103 (1994); *Stewart v. Abend*, 495 U.S. 207, 223–24, 110 S.Ct. 1750, 1761–62, 109 L.Ed.2d 184 (1990) ("The aspects of a derivative work added by the derivative author are that author's property, but the element drawn from the pre-existing work remains on grant from the owner of the pre-existing work."). Congress granted copyright protection to architectural works and architectural drawings under 17 U.S.C. §§ 102(a)(8) and 102(a)(5), respectively. As one court stated, "[t]o be eligible for copyright protection, "an architectural work must exhibit some modicum of creativity.... The architectural work need not be novel; bluntly, the vast majority of works qualify, "no matter how crude, humble, or obvious." *Value Group, Inc. v. Mendham Lake Estates, L.P.*, 800 F.Supp. 1228, 1232 (D.N.J.1992).

Copyright protects original expression only; it does not extend to any underlying ideas, procedures, processes, and systems. *Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1248 (11th Cir.1999). A copyright registration certificate constitutes *prima facie* evidence of validity of a copyright, and the burden then shifts to the party challenging the copyright to dispute its validity. *Autoskill, Inc. v. National Educational Support Systems, Inc.*, 994 F.2d 1476, 1487 (10th Cir.1993).

The court assumes without deciding, for purposes of this analysis only, that applying the above law, the plaintiff does hold valid copyrights in his renderings as

derivative works. Additionally, the parties do not dispute that the plaintiff obtained a registered copyright in December 2009. Copyright infringement protection begins with registration. *Bauer Lamp Co., Inc. v. Shaffer*, 941 F.2d 1165, 1171 (11th Cir.1991). However, copyright inheres in authorship and exists whether or not it is ever registered. *See Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.*, 29 F.3d 1529, 1531 (11th Cir.1994), citing 17 U.S.C. § 408.

> "[A]n author has a valid copyright in an original work at the moment it is created-or, more specifically, fixed in any tangible medium of expression." *See Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 823 n. 1 (11th Cir.1982) (citing 17 U.S.C. § 102(a)). "[C]opyright registration is not a prerequisite to copyright protection." *Id*. Moreover, registration of a copyright "is not obligatory, although registration is a prerequisite to an infringement suit in certain circumstances and also is a prerequisite to certain infringement remedies." *Id.* (citing 17 U.S.C. §§ 408, 411, and 412).

*McCaskill v. Ray* 279 Fed.Appx. 913, 916 (11th Cir.2008).

The issue of registration bears greatly on recoverable damages. No award of statutory damages or attorney fees is recoverable for infringements of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work. 17 U.S.C. § 412.

Although the plaintiff asserts his copyright statement on the invoices submitted to defendants protect his work, the invoices cannot be part of the contract between the

9

parties to produce the work because they were sent after the renderings were provided to the defendants. *See e.g.*, plaintiff depo. at 139-140; defendant ex M, invoice dated April 8, 2008 for work ordered March 3, 2008 and delivered April 4, 2008 through April 7, 2008.  Although the invoices contained language to the effect that by using his artwork, the defendants agreed to the terms listed in the invoices, the work was completed and sent to defendants prior to their receipt of an invoice.  Thus, any statement regarding use of the renderings in the invoices could not form the basis of an agreement between the parties concerning plaintiff's production of those renderings   *See, e.g., Florists' Mutual Inc. Co. v. Lewis Taylor Farms, Inc.,* 2008 WL 875493, *9 n.8 (M.D.Ga.2008)(*citing Sherman Foundry v. Mechanics, Inc.*, 517 S.W.2d 319, 322 (Tex.Civ.App.1974)(holding that invoices did not alter the terms of the oral contract)).

Therefore, and again assuming the plaintiff established the existence of a valid copyright, plaintiff's sole outlet for the renderings he produced for the defendants was the defendants themselves.[4]  Defendants commissioned the plaintiff to produce these renderings as a marketing tool for their various home designs.  In other words, the renderings in and of themselves have no value and no market.

---

[4]Logic dictates that a rendering how a home will appear when built has no value without accompanying home plans or blueprints.  As plaintiff had no right to offer the blueprints or elevations defendants provided him for resale, he could have no market for his renderings other than the defendants.

Having carefully considered all of the evidence submitted by the parties, the court is of the opinion that the relationship of the parties is one of a nonexclusive license from plaintiff to defendants. As a marketing tool, the defendants had already paid the plaintiff to create his renderings, and the plaintiff had granted the defendants a permissive, non-exclusive license to use and reproduce his renderings . *See e.g. Korman v. HBC Fla., Inc.,* 182 F.3d 1291, 1293 (11th Cir.1999) ("While an exclusive license to use copyrighted material must be written, a nonexclusive license can be granted orally or can be implied from the conduct of the parties."). The touchstone for finding an implied license is intent. *See John G. Danielson, Inc. v. Winchester–Conant Props., Inc.*, 322 F.3d 26, 40 (1st Cir.2003). "Without intent [to permit the use], there can be no implied license." *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir.1998). Courts have found implied licenses only in "narrow" circumstances when one party "created a work at [the other's] request and handed it over, intending that [the other] copy and distribute it." *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 558 (9th Cir.1990); see also *Korman v. HBC Fla., Inc.*, 182 F.3d 1291, 1293 (11th Cir.1999) (determining that plaintiff gave defendant radio station implied, nonexclusive license to use jingles she had written for station); *Oddo v. Ries*, 743 F.2d 630, 634 (9th Cir.1984) ("without such a license [to use], [the ] contribution ... would have been of minimal value.").

In *I.A.E., Inc. v. Shaver*, the Seventh Circuit, applying the law from *Effects,* held that an implied nonexclusive license has been granted when (1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work. *Shaver*, 74 F.3d 768, 776 (7th Cir.1996), citing *Effects*, 908 F.2d at 558-59. *See also Falcon Enterprises, Inc. v. Publishers Service, Inc.* 438 Fed.Appx. 579, 581, 2011 WL 2356788, 1 (9th Cir.2011)(The parties' conduct demonstrates that Falcon granted Publishers an ongoing nonexclusive implied license to use its content for a fee.... Falcon's claim that Publishers needed an express license for each image that Publishers published is contradicted by the frequent and informal interactions between the parties).

In *Morgan v. Hawthorne Homes, Inc.,* 2009 WL 1010476, 12 (W.D.Pa.2009), there were similar claims to those here. The court stated

> Morgan further claims that the defendants "have infringed on Mr. Morgan's copyrights and continue to infringe on his copyrights by copying his work on their web cite without authority to do so." Amended Complaint ¶ 7. In response, Hawthorne argues that pictorial representation of an architectural work does not constitute infringement. 17 U.S.C. § 120(a) states:
>
>> § 120. Scope of exclusive rights in architectural works
>>
>> (a) Pictorial representations permitted.-The copyright in an architectural work that has been constructed does not

12

> include the right to prevent the making, distributing, or public display of pictures, paintings, photographs, or other pictorial representations of the work, if the building in which the work is embodied is located in or ordinarily visible from a public place.
>
> Thus, Hawthorne argues that with respect to the public display of the buildings on its website, because the houses are ordinarily visible from a public place, plaintiff has no claim. Morgan admits that houses were constructed using his plans and are ordinarily visible from a public place. He explains, however, that this section of the statute clearly relates to architectural works; he argues that it does not apply to "technical drawings." According to plaintiff, he has a copyright in both the architectural work and the technical drawings. We find that to the extent that Morgan seeks damages for the copying of his work on their web site, as to the plans which were registered as architectural works only (Bedford Lot 30) he has no claim. *See* Amended Complaint at Pl.'s Ex. 3. We will therefore grant Hawthorne's motion for summary judgment in part and find as a matter of law that Hawthorne (and also, therefore, Hanna Holdings) did not infringe on any copyright with respect to the pictorial representation of the architectural work Bedford Lot 30 on its website (Count III).

*Morgan*, 2009 WL 1010476 (W.D.Pa.2009).

Here, when the plaintiff announced to defendants that he had copyrighted his renderings and they could not continue to use then without the payment of royalties, the defendants ceased such use. Even if there was no implied license to use the drawings in the very manner defendants did, *Morgan, supra,* again resolves the issue of infringement in the defendants' favor.

13

Given the foregoing, the court is unable to find that infringement occurred. Rather, the court finds that the defendants' use of the plaintiff's renderings was based on an implied non-exclusive license.  Thus, the court shall enter summary judgment on behalf of the defendants and against the plaintiff on this count of the complaint.

Because the court finds both that the copyright was presumptively valid, and that no infringement occurred, the court does not reach the defendants' argument concerning the "first sale" doctrine.[5]  Defendants' brief (doc. 36) at 18.  The court notes only that the plaintiff argues in response, and as the court has found above, that he transferred to defendants only a license to use and not ownership, and that the first sale doctrine does not apply to a licensee. *See Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1155-1156 (9th Cir.2011)*; citing Vernor v. Autodesk, Inc*., 621 F.3d 1102, 1107–08 (9th Cir.2010) ("The first sale doctrine does not apply to a person who possesses a copy of the copyrighted work without owning it, such as a licensee.").

---

[5] The court has before it no evidence that the defendants actually made or sold further copies of plaintiff's work .  Thus, the "first sale" doctrine, if it applies, would protect the transfer of the copy purchased by defendants to a particular licensee.  Additionally, the plaintiff produced no evidence of any licensee who actually used, copied, or transferred to another plaintiff's work.

14

Because the court has found that no infringement has occurred, the court also does not consider the defendant's argument that the plaintiff obtained his copyright through fraud.[6]

### 2. Breach of Contract:

Plaintiff asserts the parties had "a binding agreement" concerning the use of plaintiff's renderings. However, the only writings submitted to the court concerning any agreement demonstrates that once the plaintiff questioned what the parties' agreement was, they were unable to come to any agreement regarding the use of plaintiff's renderings by defendants, and ceased their business relationship. *See* defendant ex Q.

As such, the court finds the defendants are entitled to judgment in their favor on this issue, as no genuine issue of material fact remains on this count of the plaintiff's complaint, and the court shall so rule by separate Order.

B. Plaintiff's motion for summary judgment (doc. 39):

### 1. Breach of Agreement

For the same reason that the plaintiff's contract claim fails, this claim fails too. As stated above, there is no evidence regarding agreement between the parties

---

[6]Because the court has determined that the defendants' use of the plaintiff's drawings was permissible, the plaintiff's conversion count cannot survive as a matter of law. This too shall be dismissed by separate Order.

concerning the use by licensees of the art work in question. The first time this issue arose, the parties parted ways. The sole evidence of an agreement is plaintiff's invoices, which really show only that defendants agreed to pay plaintiff a sum for each rendering produced, a fact that is not in dispute anyway.

The court shall therefore deny the plaintiff's motion on this claim, as there is no genuine issue of material fact regarding the existence of an agreement.

### 2. Invalid Copyright

For the reasons set forth above, the court finds the plaintiff is entitled to judgment in his favor and against the defendants on the issue of the validity of the copyright. The court shall so rule by separate order.

### 3. Unjust enrichment

Defendants assert because they are the sole owner of the architectural drawings and designs, plaintiff has been unjustly enriched because he has benefitted from unauthorized use of defendants' drawings and designs without defendants' permission. For all of the reasons set out previously, the court finds this argument to be without merit.

## IV. Conclusion

Having carefully considered pleadings to date, the evidence submitted and the arguments of the parties, the court is of the opinion that the plaintiff is entitled to

judgment in his favor and against the defendants on the issue of the validity of the copyright, as the court finds no genuine issue of material fact remains on that issue. Additionally, the defendants are entitled to judgment in their favor and against the plaintiff on the issue of copyright infringement, the court again finding no genuine issue of material fact remains on that issue. The remainder of the cross-motions for summary judgment (docs. 36 and 39) shall be denied for the reasons set forth herein.

Based on the foregoing rulings, the court is further of the opinion that the pending motions to strike (docs. 38 and 49) have been rendered **MOOT.**

**DONE** and **ORDERED** this 16th day of May, 2012.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE